PETERSON, Chief Judge,
dissenting.
Robert Mason appeals his sentence as a violent habitual felony offender. This sentence was imposed instead of the one contemplated by his plea bargain because the trial court found that Mason failed to comply with the substantial assistance requirements of that plea. I disagree with the majority that Mason should not receive the benefit of his plea and his assistance.
This is Mason’s second appeal of his sentence. The same term of sentence was vacated by this court in an earlier appeal. In the first appeal this court found the record *101 on appeal failed to provide a basis from which this court could determine whether Mason was entitled to the benefits of his substantive assistance agreement. Mason v. State, 646 So.2d 295 (Fla. 5th DCA 1994). It is from the re-imposition of the sentence upon remand that this appeal now arises.
The record now contains a “Memorandum of Substantial Assistance Agreement.” Pursuant to this agreement, Mason was to make himself available for testimony when called by the state attorney and to testify truthfully against accomplices. On August 9,1993, Mason was called to testify in the state’s case against Henry Lee Mitchell, a man with whom Mason robbed a convenience store.
Three weeks prior to Mitchell’s trial, Mason gave a sworn statement to the police in which he gave investigators a detailed account of the robbery in which he and Mitchell participated. At the beginning of his testimony at trial, Mason repeatedly stated, “I can’t go through this.” The prosecutor then asked Mason, “Was it the truth when you told me up at the jail that the person who committed the robbery with you was Henry Lee Mitchell?” Mason responded, “Yeah, what the point.” Mason also responded, “Yeah,” to the question by the prosecutor, ‘Was that in fact Henry Lee Mitchell that committed the robbery with you?” Mason then identified Mitchell in the courtroom and the prosecutor stated he had no further questions of Mason. In fact, the prosecutor asked no more questions of Mason during the trial.
There is no doubt that Mason fulfilled his obligation under the agreement by responding to the prosecutor’s questions, but the state complains that Mason then violated the agreement while he was being cross-examined by Mitchell’s defense attorney. It is apparent that Mason exhibited reluctance to “rat” on Mitchell during cross-examination. It is also apparent that his testimony was illiterate and incoherent at times.
During the cross examination of Mason the jury was informed that Mason, in exchange for his testimony, would likely be receiving the top of a permitted guidelines sentence rather than a habitual violent felony offender sentence. Throughout the cross-examination Mason demonstrated extreme impatience with defense counsel for Mitchell. Mason stated that when he and Mitchell arrived at the Cumberland Farms store, he, Mason, went to the bathroom. When Mason was asked whether Mitchell robbed the store while he watched, Mason responded, “I don’t want to talk about it really.” Asked if Mitchell robbed the store, Mason responded, “I don’t know.” Asked again if he saw Mitchell do anything, Mason answered, “I was in the bathroom.” The defense attorney then reiterated Mason’s own testimony that Mitchell helped him rob the store and then asked him, “Isn’t it true that you didn’t see Mr. Mitchell do anything? If we believe your story, you walked in.... ” Mason cut in:
No you don’t. It’s a competition so you want to hear my word, my side of the story, then you’re going to jump back to his side of the story. You know I know ... I know long ago.
* ⅜ * * * ⅝
I know whatever all you are going to do, man, do it. That’s all I can tell you.
When asked further about his response that he went to the bathroom, Mason answered, “No, I did it all.” Mason then further complained that he just wanted to get it over with and continued to argue with Mitchell’s counsel:
Q. Well I tell you what, let’s just cut to the heart of things. The only reason you’re here right now is the only way for you to get the deal you cut with the state is for you to say Henry Mitchell robbed the store, that’s correct, right?
A. Right. Both of us were there.
Q. Ok. I understand that. You said both of you were there.
A. It ain’t just like he did it, you know, what I’m saying? Ok.
And I know — I really don’t — like I’m really no rat, you know what I’m saying. I really don’t like to rat, you know. Both of us were there.
You going to get him as much time as you’re going to give me. Y’all — y’all work together so....
⅜ * ⅜ ⅜ ⅜ ⅜
*102 Q. The only way you can get the deal you cut with the state is for you to come in and say that Henry Mitchell robbed the store, right?
A. Yeah, but I might don’t want that.
Q. But you might not want what?
A. That deal.
Q. Well, what you’re saying then is that what you told the state a couple of weeks ago wasn’t true, is that what you’re telling us now?
A. Nope.
Q. What are you telling us?
A. I really don’t want to tell you nothing.
Q. Well you’ve got to tell me something. A. No I don’t.
Q. Yeah you do.
A. No I don’t, no I don’t.
Q. Alright.
A. You ain’t got nothing before you come this far on me, you had — you wouldn’t have come like this.
Ultimately, Mason agreed with defense counsel that at the time he made the statement he was “trying to get less time.” But then he added:
It doesn’t matter how much time I get. It don’t matter. For all I care y’all can give me life. It wouldn’t matter with me.
You know what I’m saying? I ain’t trying to get no less time. I’m trying to get it over with and done. I don’t really want to even tell you.
Do what you going to do to me. You know what I’m saying. Whatever y’all going to do, do it.
* * * * * *
I don’t care nothin’ about no time. I can do time on my head, man.
Finally defense counsel asked Mason if he saw “Mitchell take anything from the store” to which Mason responded, “No.” The prosecutor then indicated to the judge that he had no further questions of the witness and defense counsel stated, “I’m not going to waste any more time. I’m done with him.” Based upon Mason’s flawed but effective performance at Mitchell’s trial,[1] Mason was re-sentenced without the benefit of his plea agreement because he “failed to provide truthful, sworn testimony at the trial.”
Mason appears to have testified truthfully during his July 19, 1993 sworn interview. About a month later at his accomplice’s trial, Mason testified rather unwillingly, but again, in a basically truthful manner. It is not Mason’s fault that the prosecutor apparently only wanted three questions answered by Mason. Mason, in fact, answered completely and truthfully these three questions posed by the prosecutor. For whatever reason the prosecutor chose not to further question Mason. Perhaps he made this decision tactically because Mason’s contradictory statements on cross examination actually helped the state’s case. When Mason was asked about the deal he made in exchange for his testimony, he rather unequivocally stated that the plea did not matter to him anymore. This obviously helped the prosecutor because it deflected the attempt by the defense counsel to impeach Mason’s credibility on the basis of Mason providing certain testimony solely to promote his own self interest. In any event, Mason fulfilled his end of the bargain by answering the key questions asked of him by the state and by choosing, on cross-examination, not to recant the substance of this testimony.
In order to vacate a plea and sentence, a court must find that there has been substantial non-compliance with the express plea agreement. McCoy v. State, 599 So.2d 645, 649 (Fla.1992). While Mason’s performance was flawed, he basically complied with the terms of his substantial assistance agreement and is entitled to the relief he requested, the specific performance of the plea agreement. I would vacate Mason’s sentence as a violent habitual felony offender and remand for imposition of the agreed-upon sentence for Mason’s substantial performance.

. The state concedes Mitchell was convicted of the robbery with which he was charged.